**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 29, 2021

*Gonzáles, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 29, 2021

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 98904-4 |
| | ) | |
| MICHAEL A. McHATTON, | ) | EN BANC |
| | ) | |
| Petitioner. | ) | Filed: <u>April 29, 2021</u> |
| | ) | |

YU, J. — We are asked to decide whether an order revoking a sexually violent predator's (SVP)[1] conditional release to a less restrictive alternative (LRA) placement pursuant to RCW 71.09.098 is one of the limited number of superior court orders appealable as of right under our Rules of Appellate Procedure. *See* RAP 2.2(a). We hold that it is not; rather, such orders are subject to discretionary review in accordance with RAP 2.3(a). Thus, we affirm the Court of Appeals.

---

[1] "'Sexually violent predator' means any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FACTUAL AND PROCEDURAL BACKGROUND

Michael A. McHatton stipulated to civil commitment as an SVP in 2002 after serving a 66-month prison sentence for sexually molesting a two-year-old boy. He was committed to the custody of the Department of Social and Health Services (DSHS) and initially placed at the Special Commitment Center (SCC) on McNeil Island. In 2012, he was conditionally released to an LRA placement at the Secure Community Transition Facility in Pierce County. Then, in 2017, McHatton petitioned for conditional release to a community based LRA placement in Spanaway, Washington, operated by Aacres WA LLC under contract with DSHS. After reviewing McHatton's treatment progress, the proposed treatment plan, and the placement facility, the court determined that conditional release to the Aacres facility was in McHatton's best interest and that conditions could be imposed that would adequately protect the community. The court entered an "Order on Release to Less Restrictive Alternative (LRA)," setting the terms of the placement and setting a number of conditions that McHatton was to abide by. One of those conditions prohibited McHatton from possessing any pictures of children.

McHatton violated that condition, and the State petitioned to have his LRA

placement revoked.  After a hearing pursuant to RCW 71.09.098, the LRA

placement was revoked, and McHatton was returned to total confinement at SCC.[2]

McHatton timely appealed the LRA placement revocation ruling to the

Court of Appeals, Division Two.  *In re Det. of McHatton*, 13 Wn. App. 2d 830,

832, 467 P.3d 112 (2020).  After noting that prior rulings had inconsistently

permitted reviews by appeal or by discretionary review without analyzing the

issue, a commissioner concluded that the order was appealable as a matter of right

pursuant to RAP 2.2(a)(13).  The State moved to modify that ruling while the

parties proceeded to brief the merits of the LRA revocation ruling.  *Id*.  A Division

Two panel granted the motion to modify and set the appealability issue before the

panel hearing the case.  Subsequently, the case was administratively transferred to

Division Three.  *Id*. at 833.  In the published portion of a split decision, the panel

held that the revocation of an LRA placement is not appealable as a matter of right

under either RAP 2.2(a)(8) or RAP 2.2(a)(13).[3]  *Id.* at 835.

---

[2] The hearing was combined with the annual show cause hearing pursuant to RCW 71.09.090(2) on the question of whether McHatton was entitled to a trial to determine whether he should be unconditionally released or released to a new less restrictive alternative placement. The issues were bifurcated on appeal.  *See In re Det. of McHatton*, 15 Wn. App. 2d 196, 475 P.3d 202 (2020).

[3] After determining that the revocation order was not appealable as of right, the Court of Appeals granted discretionary review and in the unpublished portion of the opinion unanimously upheld the revocation of the LRA on the merits.  *McHatton*, 13 Wn. App. 2d at 835, 837 (Fearing, J., dissenting in part/concurring in part).

3

McHatton petitioned for review by this court, which we granted "only as to the issue of the appealability of the order revoking the less restrictive alternative placement." Order, No. 98904-4 (Wash. Dec. 2, 2020).

## ANALYSIS

The appealability of superior court decisions is governed by the Rules of Appellate Procedure. RAP 2.2(a) lists the specific decisions that may be appealed as a matter of right. Any order not enumerated in RAP 2.2(a) is subject to discretionary review pursuant to RAP 2.3(a). An order revoking an LRA placement is not specifically listed as an appealable decision in RAP 2.2(a). Nevertheless, McHatton argues that the order falls under either the rule allowing for appeal of an order of commitment, RAP 2.2(a)(8), or the rule allowing for appeal of a final order after judgment, RAP 2.2(a)(13). We review interpretations of court rules de novo. *State v. Waller*, 197 Wn.2d 218, 225, 481 P.3d 515 (2021) (citing *State v. McEnroe*, 174 Wn.2d 795, 800, 279 P.3d 861 (2012)).

A.     Revocation of an LRA placement is not a decision ordering commitment

McHatton first argues that the revocation of his LRA placement is appealable pursuant to RAP 2.2(a)(8), which allows appeal of an "*Order of Commitment.* A decision ordering commitment, entered after a sanity hearing or after a sexual predator hearing." But this argument is foreclosed by our decision in *In re Detention of Petersen* where we explained that the provision "provide[s] an

4

appeal as of right only from the initial commitment order that followed the full evidentiary adjudication of an individual as a sexually violent predator." 138 Wn.2d 70, 85, 980 P.2d 1204 (1999). The court reasoned that there should be a right to appeal such an order "'[b]ecause it can result in a person's indefinite confinement.'" *Id.* (quoting 2 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.2, at 497-98 (1997)); *see also In re Det. of Turay*, 139 Wn.2d 379, 393 n.8, 986 P.2d 790 (1999) (acknowledging that sexually violent predators "may, as of right, appeal their *initial order of commitment* pursuant to RAP 2.2(a)(8)," but rejecting right to appeal postcommitment orders).

The statutory language supports this interpretation. When, after trial, a jury or the court determines that a person is an SVP, "the person shall be *committed* to the custody of the department of social and health services for *placement* in a secure facility." RCW 71.09.060(1) (emphasis added). The court maintains jurisdiction over the committed person until they are unconditionally discharged. RCW 71.09.090(5). Committed persons are confined to secure facilities throughout their term of commitment. RCW 71.09.020(16) (LRAs are secure facilities). A committed person's placement is determined in conjunction with their treatment plan. When a person is initially committed, they are assigned to total confinement at SCC. RCW 71.09.060(1), .020(19); *see also* RCW

5

*In re Detention of McHatton*, No. 98904-4

71.09.060(4) (courts lack jurisdiction to order LRA placement at the time of initial commitment). As their condition improves, they may petition for conditional release to an LRA. And that placement can be revoked. But regardless of whether a person is in total confinement or in an LRA, they remain a "committed person" under the statute. Therefore an order that changes the terms of confinement is not an order of commitment pursuant to RAP 2.2(a)(8).

B.      Revocation of an LRA is not a final order

McHatton also argues that the revocation of his LRA placement is appealable under RAP 2.2(a)(13), which allows for appeal of a "*Final Order after Judgment*. Any final order made after judgment that affects a substantial right." The State stipulates that revocation of an LRA placement affects a substantial right. State's Suppl. Br. at 15. Thus the question is whether the order is "final."

In *Petersen*, this court held that an order denying a release trial following an annual show cause hearing is not final for purposes of RAP 2.2(a)(13) because the trial court retains jurisdiction until the person's unconditional release. *Petersen*, 138 Wn.2d at 88. It explained that the order "disposes only of the petition before the trial court and achieves no final disposition of the sexually violent predator." *Id.* Accordingly, it was an interlocutory order subject to discretionary review. *Id.*

McHatton attempts to distinguish the revocation order at issue here from the denial of a release trial. Whereas a show cause hearing is provided annually under

6

statute, the revocation of an LRA placement is by its very nature not a recurring event. He argues that the order is final as to the State's petition for the revocation of his LRA placement. But if we were to adopt this reasoning, every interlocutory order would be appealable. As this court made clear in *Petersen*, finality requires more. An order is not appealable under RAP 2.2(a)(13) if it "disposes only of the petition before the trial court and achieves no final disposition of the sexually violent predator." *Id.*

Here, as in *Petersen*, an LRA placement revocation order "achieves no final disposition of the sexually violent predator." *Id.* The LRA placement revocation altered the nature of McHatton's confinement but did not alter his status as a civilly committed SVP. McHatton will continue to receive annual reviews where DSHS will evaluate whether conditional release to another LRA placement is in his best interest and whether conditions can be imposed that would adequately protect the community. RCW 71.09.070. And even if DSHS determines that an LRA placement is not appropriate, McHatton has a right to an annual show cause hearing to determine whether probable cause exists to warrant a full hearing on conditional release to another LRA. *See* RCW 71.09.098(8), .090.

C.     *Petersen* was not wrongly decided

Finally, McHatton asserts that "[i]f Petersen is interpreted to compel the conclusion that LRA revocation orders are not appealable, then Petersen is

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

incorrect and harmful and should be overturned." Suppl. Br. of Pet'r at 15. This court does "'not take lightly'" invitations to overturn precedent. *State v. Otton*, 185 Wn.2d 673, 678, 374 P.3d 1108 (2016) (quoting *State v. Barber*, 170 Wn.2d 854, 863, 248 P.3d 494 (2011)). Instead, this court rejects its prior holdings "only upon 'a clear showing that an established rule is incorrect and harmful.'" *Id*. (quoting *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970)). "The question is not whether we would make the same decision if the issue presented were a matter of first impression. Instead, the question is whether the prior decision is so problematic that it *must* be rejected, despite the many benefits of adhering to precedent." *Id*.

Here, McHatton cannot show either of the two requirements to overturn precedent. First, *Petersen* was correctly decided because it is consistent with the plain language of RAP 2.2(a) and the SVP statutory scheme, which provides that a trial court retains jurisdiction over an SVP until the person's unconditional release. Second, McHatton's claims of harm are premised on the erroneous assumption that discretionary review is an inferior review process. *See* Suppl. Br. of Pet'r at 16. *Petersen* expressly rejected this argument by recognizing that "as a practical matter, for meritorious claims, the discretionary review screening should present no great obstacle to obtaining review by an appellate court under RAP 2.3(b)." *Petersen*, 138 Wn.2d at 89. In McHatton's own case, the Court of Appeals

8

*In re Detention of McHatton*, No. 98904-4

accepted discretionary review, despite ultimately ruling against him on the merits. *McHatton*, 13 Wn. App. 2d at 831.

Furthermore, the proper path to change the Rules of Appellate Procedure is through the normal rule making process, not through overruling precedent to accommodate the change. "Foisting the rule upon courts and parties by judicial fiat could lead to unforeseen consequences." *In re Pers. Restraint of Carlstad*, 150 Wn.2d 583, 592 n.4, 80 P.3d 587 (2003). Thus, McHatton's contention that *Petersen* should be overruled is unavailing.

## CONCLUSION

In summary, McHatton cannot show that the order revoking his LRA placement was either a decision ordering commitment or a final order after judgment. The Court of Appeals correctly treated his appeal as a motion for discretionary review. Accordingly, we affirm.

*In re Detention of McHatton*, No. 98904-4

_____
Yu, J.

WE CONCUR:

_____
González, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Gordon McCloud, J.

_____
Madsen, J.

_____
Montoya-Lewis, J.

_____
Owens, J.

_____
Whitener, J.

10